UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL ROBINSON, | Case No. 16-10264 |
| Plaintiff, | David M. Lawson |
| v. | United States District Judge |
| DeANGELO, EVANS, MARY PARSON, MITCHELL SOLOMON, HANNA SAAD, CHARLES CAPICCHIONI, JOSEPH LIBBY, THOMAS BEHRMANN, WHITNEY WRIGHT, MICHAEL BENNETT, JOHN MACARI, RICHARD IPEMUDIA, YEE, DAVID DAWDY, GAZDECKI, ROSEN and JOHN DOE, | Stephanie Dawkins Davis United States Magistrate Judge |
| Defendants. _____/ | |

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 29, 51)**

**I.   PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 on January 25, 2016 against a variety of prison officials, alleging violations of the Eighth Amendment of the United States Constitution.  (Dkt. 1).  On March 14, 2016, District Judge David M. Lawson referred this matter to the undersigned Magistrate Judge for all pretrial proceedings.  (Dkt. 10).

Defendants Bennett, Capicchioni, Dawdy, DeAngelo, Evans, Gazdecki,

1

Idemudia, Joseph, Macari, Rosen, Solomon, and Yee filed a motion for summary judgment on May 12, 2016, contending that plaintiff's claims are barred because he failed to exhaust his administrative remedies. (Dkt. 29). Defendants Saad and Behrman filed a notice of joinder and concurrence in the motion for summary judgment. (Dkt. 30). Defendant Parson subsequently filed a motion for summary judgment, incorporating the arguments posited in the earlier filed motion. (Dkt. 51). These motions have been fully briefed by the parties. (Dkt. 36, 40, 41, 42, 44, 53). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** without prejudice for his failure to exhaust his administrative remedies.

## II. FACTUAL BACKGROUND

At the time giving rise to the allegations in his complaint, plaintiff was incarcerated at the Woodland Center Correctional Facility (WCC) in Whitmore Lake, Michigan. Defendants are all employees at WCC. Plaintiff alleges that after his arrival at WCC on December 17, 2015, he was placed on suicide watch although he posed no danger to himself or the others around him. (Dkt. 1, Pg ID 3, ¶ 7). On December 21, 2015, despite being admitted to WCC acute care, plaintiff asserts that he was not provided the personal property items allowable

under the acute care program. *Id*. at ¶ 10.

On December 30, 2015, a mental health hearing was conducted. The panel determined that plaintiff's mental health needs required "involuntary mental health treatment for 90 days." (Dkt. 1, Pg ID 5, ¶¶ 21-23). According to plaintiff, although he was on a disciplinary sanction of loss of privileges, he was denied yard breaks after 30 days and denied the ability to contact his attorney, or attend law library. (Dkt. 1, Pg ID 6, ¶¶ 28-30). Plaintiff also alleges that on January 11, 2016, his meeting with his assigned Legal Writer was terminated. (Dkt. 1, Pg ID 7, ¶ 35). Lastly, plaintiff alleges that on January 12, 2016, his medication was changed and he was transferred to another cell which he believed was more isolated. (Dkt. 1, Pg ID 8, ¶¶ 38-42).

### III. DISCUSSION

#### A. Standard of Review[1]

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding*

---

[1] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), Judge Lawson has recently concluded that such a practice is not appropriate and legally unsupported. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).

*v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800

(6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

      B.      <u>Legal Standards for Exhaustion of Administrative Remedies</u>

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,*

5

532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

C.   Analysis and Conclusions

MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007) governs plaintiff's claims here. (Dkt. 29-2). That policy states, in relevant part:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
> * * *
> P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her normal control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.
> * * *
> R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates,

7

times, places and names of all those involved in the issue being grieved are to be included.

\* \* \*

BB. A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. \* \* \*

\* \* \*

FF. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no response was received, within ten business days after the date the response was due, including any extensions.

GG. The Grievance and Appeals Section shall be the respondent for the Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The Grievance and Appeals Section shall forward grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator shall ensure the grievance is investigated and a response is provided to the Grievance and Appeals Section in a timely manner. The Manager of the Grievance and Appeals Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs Division and, for disability issues, to the Equal Employment Opportunity Office within the Bureau of Human Resources, as appropriate, and that a copy of the Step III response is provided to the grievant.

*Id*.

According to defendants, plaintiff's earliest occurring allegation in the complaint is that after his arrival at WCC on December 17, 2015, he was placed on suicide watch, even though he posed no danger to himself or the others around him. (Dkt. 1, Pg ID 3, ¶ 7). Defendants point out that, although plaintiff filed a total of five (5) Step III grievance appeals while incarcerated at WCC, all of those grievances were filed in 2011, 2012 and 2014, thus preceding all of his current complaint allegations. (Dkt. 29, Ex. B). In other words, plaintiff filed no grievance in relation to the allegations of this case. As a result, defendants assert that plaintiff has not properly exhausted since he failed to follow the procedures of the policy by filing a Step III grievance appeal related to his present complaint allegations before filing this lawsuit.

In response, plaintiff maintains that he exhausted all the administrative remedies "available" to him by filing numerous Step I grievances related to the treatment at issue in this lawsuit. (Dkt. 36). Plaintiff says that the issues were not remedied and the WCC grievance coordinator neither provided him with Step I grievance receipts containing identification numbers, nor returned the Step I grievances back to him. Plaintiff further advances, without any evidentiary support, that an "unknown MDOC official" stole the copies of his Step I grievances from his cell. *Id.* Consequently, plaintiff submits that he was prevented from filing Step II and Step III grievances and defendants' motion for

9

summary judgment should be denied. *Id*.

To begin with, plaintiff has failed to identify any evidence in the record to support his claim that he filed grievances related to the present allegations. Plaintiff merely restates and refers back to the allegations in his complaint indicating that he filed grievances which were left unaddressed by defendants. (Dkt. 53 at 1). Plaintiff's factual allegations simply "do not rise to the level of 'specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial' on the exhaustion issue." *Green v. Unknown Haverstick*, 2016 WL 5660424, *2 (W.D. Mich. 2016) (internal citations omitted) (quoting *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

Moreover, even if plaintiff had successfully demonstrated that he did, in fact, file Step I grievances related to his complaint allegations, he may not forego all steps of the MDOC grievance procedure merely because he did not receive a timely response to his Step I grievance as he alleges. Rather, just as prison officials may not disregard the grievance procedure by refusing or failing to respond to a grievance at any step of the process in order to prevent a prisoner from exhausting his grievance, *see Boone v. Fighter*, 2007 WL 2694321, *15 (E.D. Mich. 2007), a prisoner may not refuse to complete the grievance process, despite the failure to receive a timely response at any step of the grievance process. *See Smothers v. MDOC*, 2007 WL 1238898, *1 (W.D. Mich. 2007). The

10

*Smothers* court, in applying the Supreme Court's rational from *Woodford*, pointed out that under Michigan Department of Corrections policy, if a prisoner "does not receive a timely response" to a grievance, he may appeal that matter to Step II in the grievance process. *Smothers*, at *1. In *Smothers*, the plaintiff admitted that he did not file a Step II grievance against the defendants after failing to receive a response. Therefore, the court concluded that the plaintiff failed to follow the policy set forth by the MDOC to proceed to the next step in the grievance process. And, accordingly, pursuant to *Woodford*, the plaintiff did not meet the exhaustion requirement. *Id.*; *cf. Brooks v. City of Pine Knot*, 2009 WL 3414929, *3 (E.D. Ky. 2009) (applying the Federal Bureau of Prisons grievance regulation, the Court concluded that "[u]nder federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it.").

Apparently in an effort to posit that he should be excused from completing the administrative process, plaintiff argues that the defendants "created barriers" to his completion of the grievance procedure. (Dkt. 53 at 1). Indeed, where administrative remedies have effectively been rendered unavailable, a prisoner may be excused from pursuing them to completion. In *Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016), the Supreme Court concluded that if the prisoner is effectively barred from pursuing a remedy by policy or by the interference of

11

officials, the grievance process is not available, and exhaustion is not required. Specifically, the Court articulated three scenarios under which a prison's grievance procedures may be rendered unavailable:

> As relevant here, there are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Id.* at 1858-1860.

Here, while plaintiff contends that he never received grievance numbers or copies of his Step I grievances, he does not explain how this prevented him from attempting to file subsequent steps in the grievance process, such that the process was rendered "unavailable." Though filing subsequent steps in the grievance process may be slightly impaired by not having the grievance number properly identified on the paperwork, nothing in this record suggests that plaintiff was thwarted from completing the grievance process because of this issue. Indeed, plaintiff makes no claim that he was actively prevented from obtaining the

12

grievance number, or that it was otherwise unobtainable. Rather, he merely argues that he did not receive timely responses to or return copies of his alleged Step I grievances. Moreover, the unsubstantiated allegation that his retained copies of the Step I grievances were stolen from his cell, even if believed, falls short of demonstrating that his administrative remedies were rendered unavailable. More is required for the Court to deem the grievance process "unavailable" such that complete exhaustion is not required. Bald assertions of anonymous official misconduct fail to meet the minimal standard that a jury could ostensibly find in his favor, and thus avoid summary disposition.

The undersigned concludes that the alleged failure to provide copies of the Step I grievances or the assigned grievance number(s) does not sufficiently rise to the level of "interference" with the grievance process. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (holding that prison counselor's implicit refusal to provide inmate with grievance form did not excuse exhaustion where the inmate "does not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form or to file a grievance without a form."). Plaintiff did not even articulate what, if any, efforts he may have made to proceed to Step II. Having taken several other grievances to Step III at the same facility in prior years, it is evident that plaintiff understands the process and is capable of navigating the administrative procedures. Thus, the undersigned

concludes that defendants have met their burden of establishing that plaintiff failed to exhaust his administrative remedies and the complaint should be dismissed without prejudice.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** without prejudice for his failure to exhaust his administrative remedies.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 26, 2017                s/Stephanie Dawkins Davis
                                      Stephanie Dawkins Davis
                                      United States Magistrate Judge


**CERTIFICATE OF SERVICE**

I certify that on January 26, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Michael Robinson, #515217, 154 Roosevelt Hudson Dr., Yazoo City, MS 39194.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov